ANNA B. GLOESER v. DOLLAR STEAMSHIP LINES, INC.[1]

October 5, 1934.

No. 29,890.

[1]Reported in 256 N. W. 666.

*J. H. Mulally,* for appellant.
*O'Brien, Horn & Stringer,* for respondent.

*I. M. OLSEN, Justice.*

Defendant appeals from an order of the district court of Ramsey county denying its motion for an order setting aside the service of the summons herein.

Defendant is a foreign corporation, organized under the laws of the state of Delaware, with its principal office and place of business in San Francisco, California. It is engaged in operating ocean-going steamships, in passenger traffic, between ports on the

Atlantic and Pacific coasts of the United States and to foreign countries. It has no property in this state and does no business in this state except as hereinafter stated. It is not licensed to transact business in this state and has no agent appointed, authorized to accept service of process, as required by 2 Mason Minn. St. 1927, §§ 7493, 7494. None of its officers or general agents reside or are located here. It maintains no office or place of business here. It has no employes here. The summons was served upon an employe of the Travel Bureau of the First National Bank of St. Paul.

Plaintiff, a resident then and now of Ramsey county in this state, was a passenger on one of defendant's steamships on a trip from New York to San Francisco, *via* the Panama Canal, and claims to have suffered personal injury while a passenger on said ship by reason of the negligence of one of defendant's employes.

Defendant appeared specially and moved for an order setting aside the service of the summons.

The manager of the Travel Bureau, called as a witness by the plaintiff, testified that the primary function of the bureau was to obtain business for the various railway and steamship lines represented by it, either through personal solicitation, by mail, telephone, or by advertising in newspapers and periodicals; that only passenger business was solicited; that it acted as agent for these lines in soliciting passenger business and selling tickets; that in the case of this defendant the bureau was not supplied with any tickets for sale by it, but obtained such tickets from the defendant's Chicago office, when ordered and paid for by a customer. Accommodations and reservations for passage, if applied for, were obtained by wire or correspondence. When a ticket was ordered the bureau collected the full amount of the ticket and remitted to the defendant, less the commission, and the defendant sent the ticket to the bureau for delivery to the purchaser. The bureau dealt in this way with defendant's Chicago office. Other services of the bureau consisted in furnishing travel information and literature to customers or inquirers and assisting in obtaining visas on passports.

The plaintiff, by affidavit, deposes that she did consult the Travel Bureau "relative to the accommodations, times for passage, ex-

penses, arrangements for tickets and baggage and other necessary and pertinent facts relative to a possible trip from New York through the said Panama Canal to one of the Western ports of the United States," and that employes of the bureau offered to sell her a ticket on the defendant's line from New York for such a voyage, but that her plans for the trip were not completed and she did not purchase any ticket from the bureau. Later she went to New York and there purchased a ticket from the defendant for the voyage. We have then a case where no contract was entered into in this state and where the cause of action did not arise in this state.

There is also an affidavit by plaintiff's counsel stating that the bureau held itself out as selling steamship tickets and had the words "STEAMSHIP TICKETS" on a window of its office, and held itself out as representing railroads and steamship lines; that the Round America Cruise could start at any main line railroad station and the fare be made to include ticket to New York and home again from California.

The Travel Bureau was acting under a written contract with defendant reading as follows:

"I, Travel Bureau, First National Bank, hereby
(Name of Applicant)
make application to represent the
Dollar Steamship Lines Inc. Ltd. as a Sub-Agent
(Name of Steamship Company)
(State whether 'Sub-Agent' or 'Tour Organizer')
located at 115 East Fourth Street, St. Paul, Minn.
(Street and Number)    (City or Town)    (State)
AND AGREE, in the event of my appointment, to conform to the Rules of the said Steamship Company, copy of which I have received and read and hereby agree to, and to conform to all instructions from and rules which may be issued by the said Steamship Company;

"I FURTHER AGREE to hold in trust for the said Steamship Company any steamship passage tickets and orders, railroad tickets and orders, money orders or other forms supplied to me for sale, and to sell the same only at the rates quoted by said Steamship

Company, and when sold I agree to keep and hold the proceeds of sale, and also any deposits and any funds collected for the account of the said Steamship Company in trust and that I will remit the proceeds of sale and all deposits and all funds collected for the account of the said Steamship Company to the said Steamship Company immediately received and that I will return all unsold tickets and orders upon demand;

"I Further Agree that the relationship set up between me and said Steamship Company is not that of debtor and creditor but of trustee and beneficiary, and that all funds collected for the account of the said Steamship Company and all funds derived from the sale of tickets and orders are the Steamship Company's property and do not belong to me;

"I Further Agree to become responsible for each ticket and order delivered to me and to indemnify and save the said Steamship Company harmless from loss whether occasioned by forgery or otherwise;

"I Also Agree Not To transfer or sell the agency appointment of said Steamship Company without its consent and that I will report without delay any change that may affect the agency;

"I Further Agree that under any bonding plan which the said Steamship Company may arrange, this appointment shall not become effective unless and until any forms necessary in connection with such bonding arrangements have been executed by me, and are acceptable to the said Steamship Company;

"I Further Agree that this appointment may be withdrawn by the said Steamship Company at any time.

"No modification of the terms of this Trust Agreement shall be effective unless made in writing and signed by both parties."

■ The primary question presented for review is whether, at the time of the claimed service of the summons, the defendant was doing business in this state of such a nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction and is by its duly authorized officer or agent present within the state or district where service is attempted. Consoli-

dated Textile Corp. v. Gregory, 289 U. S. 85, 53 S. Ct. 529, 77 L. ed. 1047.

There are two requisites to local jurisdiction over a foreign corporation, where no property is seized or attached. It must be doing business in the state or district of the nature and character stated, and it must be present there by an authorized officer or agent. The business done by this defendant in this state has been already outlined. As shown by the record, it was a very limited business as to nature and character. It had here a soliciting agent, this Travel Bureau, which was doing a general soliciting business for steamship lines and railways. The bureau was doing its own business in its own office. It had authority to sell, but not to issue, tickets for defendant's ocean steamships. It was not furnished with any tickets or ticket blanks for sale. When a customer desired a ticket, the money was forwarded to defendant's Chicago office and the ticket there issued and sent to the Travel Bureau here for delivery to the purchaser.

The transportation here in question was an ocean journey from New York to San Francisco. The transportation neither commenced nor terminated here. Defendant's business was ocean transportation. As far as shown, none of its ships ever did or could arrive at or depart from the Lake Superior ports of this state.

The sale of tickets by the Travel Bureau in the manner stated (none sold to plaintiff) would appear to be but incidental to its soliciting activity. The mere selling or obtaining for customers some form of ticket or bill of lading is not sufficient to constitute doing business within the state. E. Bernier & Sons v. Illinois Cent. R. Co. 176 Minn. 415, 223 N. W. 674; Peterson v. C. R. I. & P. Ry. Co. 205 U. S. 364, 27 S. Ct. 513, 51 L. ed. 841; Green v. C. B. & Q. Ry. Co. 205 U. S. 530, 27 S. Ct. 595, 51 L. ed. 916; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. ed. 710; Consolidated Textile Corp. v. Gregory, 289 U. S. 85, 53 S. Ct. 529, 77 L. ed. 1047.

The business done by this Travel Bureau for the defendant was not a sufficient doing of business in this state to subject the defendant to the jurisdiction of the state court. See cases above cited and

Gamble-Robinson Co. v. Pennsylvania R. Co. 157 Minn. 306, 196 N. W. 266; People's Tobacco Co. Ltd. v. American Tobacco Co. 246 U. S. 79, 38 S. Ct. 233, 62 L. ed. 587, Ann. Cas. 1918C, 537; Rosenberg Bros. & Co. Inc. v. Curtis Brown Co. 260 U. S. 516, 43 S. Ct. 170, 67 L. ed. 372; Bank of America v. Whitney Cent. Nat. Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. ed. 594; Davis v. Farmers Co-op. Equity Co. 262 U. S. 312, 43 S. Ct. 556, 67 L. ed. 996; A. T. & S. F. Ry. Co. v. Wells, 265 U. S. 101, 44 S. Ct. 469, 68 L. ed. 928; James-Dickinson F. M. Co. v. Harry, 273 U. S. 119, 47 S. Ct. 308, 71 L. ed. 569; Michigan Cent. R. Co. v. Mix, 278 U. S. 492, 49 S. Ct. 207, 73 L. ed.'470; Denver & R. G. W. R. Co. v. Terte, 284 U. S. 284, 52 S. Ct. 152, 76 L. ed. 295.

■ Where jurisdiction is acquired by a state court by attachment or garnishment of property of defendant in the state, to the extent of the property impounded, or where the defendant is doing business in the state in such a way as to have subjected itself to the local jurisdiction, and service is made on an authorized agent there located, the question then is not strictly one of initial jurisdiction, but is whether the prosecution of the suit is such an unreasonable interference with interstate commerce that the state court has no right to proceed and should not be permitted to proceed therein.

In Rosenblet v. Pere Marquette Ry. Co. 162 Minn. 55, 202 N. W. 56, where jurisdiction was obtained by attachment, it was held that there was no unreasonable interference with interstate commerce although the property attached was used in interstate commerce. The federal Supreme Court made similar decisions in Davis v. Cleveland, C. C. & St. L. Ry. Co. 217 U. S. 157, 30 S. Ct. 463, 54 L. ed. 708, 27 L.R.A.(N.S.) 823, 18 Ann. Cas. 907, and in Missouri ex rel. St. Louis, B. & M. Ry. Co. v. Taylor, 266 U. S. 200, 45 S. Ct. 47, 69 L. ed. 247, 42 A. L. R. 1232. Whether in such cases the suit is an unreasonable interference with interstate commerce depends on the facts in each case. The mere fact that there has been a seizure of property does not determine the question. A. T. & S. F. Ry. Co. v. Wells, 265 U. S. 101, 44 S. Ct. 469, 68 L. ed. 928. In International Mill. Co. v. Columbia Trans. Co. 292 U. S. 511, 54 S. Ct. 797, 800, 78 L. ed. 1396, it was held that the seizure of a

vessel and cargo within the territorial waters of this state did not unreasonably burden interstate commerce under the facts there presented. It may be noted that the court there gives weight to the facts that agents at Duluth in this state were employed by defendant to act for it when its boats were loaded or unloaded at Duluth, to superintend the loading and unloading of cargoes and issue bills of lading, and attend to other matters found necessary in so doing; also that defendant's vessels regularly navigated the waters of Lake Superior, over which waters Minnesota had concurrent jurisdiction, and the court said [292 U. S. 520]: "It is engaged in transportation in Minnesota as much as it is engaged in transportation anywhere." The case is clearly distinguished from our present case.

■ The fact that the plaintiff is a resident of the state or district where suit is brought, while not conclusive, has weight in determining whether the prosecution of the suit is an unreasonable interference with interstate commerce. But that fact can generally have no bearing upon the primary jurisdictional question of whether, at the time of attempted service of process, the defendant is doing business in the state or district in such a way as to be subject to the jurisdiction of a local court.

■ For the plaintiff here numerous federal and state decisions have been cited. We do not extend this opinion by citing or attempting to analyze all of them. Reliance appears placed on the following: St. Louis S. W. Ry. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. ed. 486, Ann Cas. 1915B, 77; Reynolds v. M. K. & T. Ry. Co. 224 Mass. 379, 113 N. E. 413, followed in a second action between the same parties reported in 228 Mass. 584, 117 N. E. 913, which later decision was affirmed by the federal Supreme Court, reported in 255 U. S. 565, 41 S. Ct. 446, 65 L. ed. 788, without opinion, on authority of St. Louis S. W. Ry. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. ed. 486, Ann. Cas. 1915B, 77; International Harv. Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. ed. 1479; Hoffman v. Missouri ex rel. Foraker, 274 U. S. 21, 47 S. Ct. 485, 71 L. ed. 905; Boright v. C. R. I. & P. Ry. Co. 180 Minn. 52, 230 N. W. 457. An examination of these and other cases cited shows that where in those cases jurisdiction was acquired by service

of process on an agent or officer of the defendant within the state where suit was brought the defendant was doing a much more extensive and diverse business in the state than is here shown or claimed.

The most recent case called to our attention is that of Maxfield v. Canadian Pacific Ry. Co. and Canadian Pacific Steamship Co., decision by United States circuit court of appeals, eighth circuit, opinion by Judge John B. Sanborn, filed May 2, 1934, reported in 70 F. (2d) 982. In that case service upon defendants, foreign transportation corporations, was made upon an agent in Minneapolis. Neither of the defendants did any transportation business in this state, nor any other business except such as was done by the agent in question and other employes in the office maintained in Minneapolis. Neither corporation had any property in this state except office equipment and rolling stock of the railway company, which might from time to time have been brought in here by other railway companies in the course of traffic with Canada. The importance of the case is in the fact showing as to what business was done for these companies by the agent and employes in the Minneapolis office. The opinion states [70 F. (2d) 983]:

"The office in Minneapolis serves as the headquarters for solicitation of transportation business for the Canadian Pacific Railway Company and the Canadian Pacific Steamships, Ltd., and the work incidental to the business of such solicitation. The steamship company has traffic relations with the railway company and other railways in Canada which have traffic relations with certain railways in the United States, which, with said steamship ocean routes, constitutes a through and continuous route for passengers and freight to and from ports in the United States and Canada to foreign destinations. The office force in Minneapolis is maintained for the purpose of serving these defendants for the carrying out of the business hereinbefore described. H. M. Tait, the person upon whom the attempted service was made herein, is in charge of the office, and has the title of General Agent, Passenger Department. The office is apparently maintained by the railway company, but is used by both

defendants for the purposes herein indicated. The office force consists of H. M. Tait, one person in charge of handling tickets, one ticket clerk, two employes soliciting passenger business, one stenographer, and two freight solicitors. One of these employes, to-wit: E. A. Dietz, has authority to sell coupon tickets good for travel over connected lines in the United States and the Canadian Pacific Railway in Canada, and steamship tickets good for travel over navigable waters foreign to Minnesota upon which the Canadian Pacific steamships are operated.

"Plaintiff procured transportation from Minneapolis * * * to Montreal (over the Minneapolis, St. Paul & Sault Ste. Marie Railway to the Canadian boundary, thence *via* the Canadian Pacific Railway), and steamship ticket through H. M. Tait from Montreal, Canada, to Glasgow, Scotland. The steamship ticket was procured by said Tait by mail from the steamship company's principal office at Montreal, and when received by him was delivered to the plaintiff at Minneapolis. Plaintiff brings this action to recover damages on account of an alleged accident which she contends took place while she was *en route* from Montreal to Glasgow aboard one of the steamships of the Canadian Pacific Steamship Company."

Plaintiff there, as here, was a resident of this state. The Minnesota federal district court and the circuit court of appeals each held that neither of the defendants was doing business in this state of such a nature and character as to subject it to the jurisdiction of the local court, and set aside the service of the summons for want of jurisdiction.

A comparison of the facts in that case with the facts in our present case shows that the business there transacted in this state by defendants was much more extensive and diverse than that here transacted for defendant by the Travel Bureau.

It is common knowledge that many steamship companies, incorporated in one or other of our coastal states and engaged in the ocean passenger transportation traffic between ports in different states and between this country and foreign countries, as well as many steamship companies chartered in foreign countries and en-

gaged in like passenger traffic, have soliciting agents and agencies of the same kind and doing substantially the same kind of business as the Travel Bureau here in question. These agents and agencies are found in the principal cities of practically every state and solicit business from the public, and incidentally sell to or procure steamship tickets for their customers from all the leading steamship companies. To hold that these many steamship companies, by employing these soliciting agencies, have subjected themselves to the local jurisdiction of each of the 48 states where such agencies are found, seems unreasonable. Viewing the ocean passenger traffic of all these companies as a whole, it is quite clear that such a holding would impose an unreasonable burden on both interstate and foreign commerce.

■ The conclusion reached is that defendant was not doing business in this state of such a nature and character as to subject it to the jurisdiction of the state court, and that the attempted service of summons on the Travel Bureau was not due process and no jurisdiction over defendant was obtained thereby.

The order appealed from is reversed and the service of the summons herein on the Travel Bureau of the First National Bank of St. Paul is vacated and set aside. This will permit entry of judgment here so that the application to the Supreme Court of the United States for a writ of *certiorari* may be made direct if desired.

Reversed.